WYC: CAC
F# 2009R01074

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

GOVIND CHABRA,
    also known as
    "Gubundar Chabra,"

                Defendant.

- - - - - - - - - - - - - - - - -X

**M-10-040**

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANT

(T. 18, U.S.C. § 1347)

EASTERN DISTRICT OF NEW YORK, SS:

       L. M. CAULFIELD, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

       Upon information and belief, in or about and between June 2007 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant GOVIND CHABRA, also known as "Gubundar Chabra," together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, to wit: Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of

2

Medicaid, in connection with the delivery of and payment for health care benefits, items, and services.

(Title 18, United States Code, Section 1347)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the FBI and have been so since April 2008. I am assigned in the New York Field Office to Squad C-33, which investigates health care fraud. I am familiar with the facts and circumstances set forth below from my conversations with other law enforcement agents, my review of the investigative file and from reviewing reports by other law enforcement officers involved in the investigation.

## BACKGROUND

2. Through my work investigating health care fraud cases, I have learned that Medicaid is a medical assistance program that pays the medical expenses and prescription drug costs of qualifying individuals and families with low income and a lack of financial resources. Medicaid is jointly funded by the federal, state and local governments, and is administered by the states.

3. The Office of Medicaid Management, New York State Department of Health, administers the Medicaid program in New York State. In order to obtain Medicaid assistance in New York

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

3

State, individuals and their families are required to apply through their local Departments of Social Services. For the five boroughs of New York City, the local department of Social Services is the Human Resources Administration ("HRA"), which is an agency of the City of New York. HRA's Medical Assistance Program ("HRA-MAP") determines the eligibility of New York City residents who apply to the Medicaid program. HRA-MAP bases its eligibility determinations on various factors, including the amount of an applicant's income, living expenses and outstanding medical bills; whether the applicant lives within New York City; and whether the applicant is pregnant, blind or disabled.

4. New York City residents or their representatives can apply for Medicaid by submitting a completed and signed application form at an HRA-MAP office or through a health plan that serves as a "facilitated enroller" for the New York State Department of Health. First-time applicants for Medicaid are required to supplement their application with relevant documentation, such as a birth certificate, recent paycheck stubs or other proof of income, and proof of residence. Applicants determined to be eligible for Medicaid receive a Medicaid card, which is to be used when obtaining medical services.

## THE INVESTIGATION

5.   From a review of consensual recordings of a cooperating witness acting in an undercover capacity under the direction of law enforcement (the "CW"),[2/] as well as a review of the records in this case, I have learned, in substance and in part, the following:

6.   On or about June 18, 2007, The CW had a consensually-recorded telephone conversation with the defendant CHABRA in which CW requested a Medicaid card for a friend ("Beneficiary #1")[3/].  CHABRA told the CW that he would need a copy of Beneficiary #1's green card or passport, both sides of a social security card and a Con Edison bill.  CHABRA further told CW that it would cost approximately $300.00 for him to obtain the Medicaid card.  CHABRA did not ask for, and the CW did not provide, any information about Beneficiary #1's eligibility for a Medicaid card.

7.   On or about June 21, 2007, the CW met with CHABRA in Queens, New York.  At the meeting, which was consensually recorded, the CW gave CHABRA $300.00 for a New York State Medicaid beneficiary card in the name of Beneficiary #1.  The CW

---

[2/]   The CW pled guilty in this District, pursuant to a cooperation agreement, to Conspiracy to Commit Mail Fraud and Health Care Fraud in violation of Title 18, United States Code, Sections 1341, 1346 and 1347.

[3/]   The beneficiaries in this complaint were either fictitious individuals or individuals cooperating with law enforcement pursuant to a cooperation agreement with this District.

also provided CHABRA with copies of Beneficiary #1's social security card, Con Edison bill and United States passport. CHABRA requested information about Beneficiary #1's income and property. The CW told him that people like Beneficiary #1 could not supply that information, and that CHABRA would "have to work with [him] illegal," but that he would pay CHABRA more. CHABRA agreed to this.

8. On or about June 26, 2007, a completed Medicaid application was submitted to HRA in the name of Beneficiary #1. This application included false information about Beneficiary #1's income, such as the fact that Beneficiary #1 was supported by a cousin who provided free room and food, plus a monthly assistance of $80.00. This application was not completed or submitted by the CW, and none of the information therein was provided to CHABRA by the CW. Beneficiary #1's signature was forged on the application, as well as a signature of Beneficiary #1's fictitious cousin.

9. On or about August 29, 2007, the CW gave CHABRA copies of paperwork sent by HRA addressed to Beneficiary #1. CHABRA explained that the papers stated that Beneficiary #1 was accepted to the Medicaid program and was given a health plan.

10. On or about September 7, 2007, the CW paid CHABRA $400.00 to obtain a Medicaid card for another individual ("Beneficiary #2"). The CW provided copies of Beneficiary #2's social security card and permanent resident card.

11. On or about September 10, 2007, a completed Medicaid application was submitted to HRA in the name of Beneficiary #2. This application included false information about Beneficiary #2's income, such as the fact that Beneficiary #1 was supported by a friend who provided free room and food, plus a monthly assistance of $80.00. This application was not completed or submitted by the CW, and none of the information therein was provided to CHABRA by the CW. Beneficiary #2's signature was forged on the application, as well as a signature of Beneficiary #2's fictitious friend.

12. On or about September 12, 2007, CHABRA told the CW that he would mail a letter to Beneficiary #2 to establish proof of address and instructed CW to bring the letter back to him after Beneficiary #2 received it.

13. On or about September 20, 2007, the CW gave CHABRA a telephone bill in the name of Beneficiary #2. CHABRA warned the CW not to talk "money" over the telephone because the government could be listening. CHABRA also told the CW that he was informed by a co-conspirator that Beneficiary #1's Medicaid card was in the mail.

14. On or about September 20, 2007, a Medicaid card in the name of Beneficiary #1 was mailed to an address in Queens, New York that was provided to CHABRA by the CW.

15. On or about November 14, 2007, a Medicaid card in the name of Beneficiary #2 was mailed to an address in Queens, New York that was provided to CHABRA by the CW.

16. On or about March 10, 2008, the CW paid CHABRA $300.00 to obtain a Medicaid card for a fourth individual ("Beneficiary #3"). The CW provided copies of a social security account number, green card and a Verizon telephone bill, all in the name of Beneficiary #3. The CW informed CHABRA that Beneficiary #3 had a lot of money. CHABRA confirmed that it did not matter how much money Beneficiary #3 had as long as he did not have any money in a bank account.

17. CHABRA told the CW that he would send a piece of mail to Beneficiary #3 to establish proof of address and instructed the CW to bring the letter back to him after Beneficiary #3 received it. Thereafter, Beneficiary #3 received a mailing from Fidelis Care.

18. On or about March 24, 2008, a Medicaid application was submitted to HRA in the name of Beneficiary #3. This application included false information about Beneficiary #3's income, such as the fact that Beneficiary #3 was supported by a cousin who provided free room and food, plus a monthly assistance of $80.00. This application was not completed or submitted by the CW, and none of the information therein was provided to WAHID by the CW. Beneficiary #3's signature was forged on the application, as well as a signature of Beneficiary #3's fictitious cousin.

19. On or about June 1, 2008, a Medicaid card in the name of Beneficiary #3 was mailed to an address in Queens, New York that was provided to CHABRA by the CW.

8

20. WHEREFORE, your deponent respectfully requests that the defendant GOVIND CHABRA, also known as "Gubundar Chabra" be dealt with according to law.

_____
L. M. CAULFIELD
Special Agent
Federal Bureau of Investigation

Sworn to before me this
13th day of January, 2010

ige